The next case on the calendar is Romano v. Ulrich. Good morning, Your Honors, and may it please the Court. My name is John Sreddo of De Pitney for Mr. Romano. The PLRA requires prisoners bringing civil rights claims to exhaust available remedies. It does not require prisoners to exhaust unavailable remedies that are, practically speaking, incapable of use to obtain relief. So it does not require a prisoner to go down a dead end, as the Supreme Court put it in Ross v. Blake, to try to exhaust something that will never result in any relief. It also doesn't require exhaustion of remedies that are so opaque and so confusing, as both they just, as a practical matter, are incapable of providing relief for a prisoner. That is what the grievance procedures were here. They were opaque, you think? I do think they were opaque. I think the opacity, such as it is, is this. This is what they say. Twenty-one days. You have to file your grievance within twenty-one days. That seems clear. Very clear. Nowhere in there does it say, oh, but by the way, if, after enduring a beating at the hand of prison officials, we decide to ship you to Office of Mental Health Custody, because that's where you need to be, you're not going to get the twenty-one days. You're only going to get whatever amount of time you had. I'm troubled by that argument, because doesn't that suggest that if it was not clear to your client that he couldn't file from OMH custody, that he should have tried to file from OMH custody, which he did not do? Well, the question— Until way after the twenty-one days is gone. Absolutely. And I think the teaching of Ross v. Blake and Williams is that what the statute says is you have to exhaust remedies that are available. If the remedy is unavailable, because it's opaque, or, you know, maybe opacity is not the right analogy here. Maybe it's just some sort of fundamental unfairness to cut the argument. Right. I mean, he was blocked. He was blocked. Blocked. Yeah. Pretty clearly blocked. Dead end may be the better. You know, I started off dead end or opacity. I think they're both kind of helpful. But let's stick with dead end. It might be better for him. If they had a rule that said you have to file in twenty-one days, but you can't file from OMH, then— There's no tolling, so— There's definitely no tolling. Everyone agrees with that. And I do think it's also just a straight dead end. And I think even the district court below said, well, after five days, yeah, that does look like a dead end to me. So then the question, because if you only get the five days, if you're going to be cut off after five days, is that still an available room? Five days or thirteen days? So I think it's five. But at the very least, there's a question of fact as to five versus thirteen. But in any event, it's not up to twenty-one days. It's not a reasonable period of time up to twenty-one days. It's twenty-one days, right? Exactly. And so whether we're talking about five or we're talking about thirteen, this is just a question of can a prison grievance procedure that has a twenty-one-day rule, without notice, just cut it off at five or at thirteen or at any time before? Matt, two things. I want to know if either of these two things you think matter. One, does it matter that it was the act of the Bureau of Prisons that made the remedy unavailable after whether it's five days or thirteen days? Yes, I do think it matters. And I think— But if he just, if at day thirteen, let's assume, I don't think this is quite this case, but let's assume after the beating, he's more or less fine, his mind is clear, he can file a grievance, he's got twenty-one days, but suddenly at day thirteen, he has a stroke and becomes incapacitated for a while. You wouldn't be saying, would you be saying then that he only had thirteen days and so he didn't really get his twenty-one and so, I mean, there's no tolling. So we have another argument in our brief about his mental health and that being kind of an open question in the circuit, but let's put that to one side. And let's say the court didn't go down that road. No, it depends, and I think the other side uses the analogy of an accident. Let's say he had an accident. We use the analogy of a statute of limitations. It is the prison, the big difference between that is it is the prison official's conduct. One fact that matters, or at least is helpful to you. Very much so, I think. Does it matter, and if so, what does the record say about this, whether he had any notice that he was going to be transferred to OMH? Because I'm looking ahead at what rule we're  It's a very common situation. If somebody has a grievance at Rikers Island at a point where perhaps he knows that the next step in his progress is to be sent to a different institution to serve a term, right? Right. And he knows that that's going to happen sometime short of twenty-one days. Is it then his obligation to, can he say, well, they transferred me. It was their act, and now under the rules, I can't file a grievance at Greenhaven about what happened at Rikers, and I can't file a grievance at Rikers when I'm at Greenhaven, catch twenty-two. In other words, but that guy knew in that circumstance that he wasn't going to really have twenty-one days. Well, wait, is that accurate? I mean, if he's at Greenhaven, he can file his grievance, but he has to send it to Rikers, right? That's my understanding. Now, I think Office of Mental Health Custody is sort of a different animal, or at least it was. I think the brief is helpful in saying that's changed now. But just to answer the question, no, there's nothing in the record that shows that he had any notice. I think it's quite clear that he didn't have any notice about either what was about to happen to him or what that would be. And I think the— For purposes of this case, your position is we should assume on this record that he is the Bureau of Prisons, not necessarily a malicious actor intended to cut off his grievances, but by their choice to move him to OMH, without giving him time to file a grievance or letting him know that this is going to happen, he goes into OMH custody and then under the rules he can no longer file a grievance, that that is the problem. It's not a question of, oh, he could have filed it the next day if he wanted to or something like that. It's that he didn't get the 21 days by an act of the Bureau of Prisons that he did not know was coming. Exactly right. And I—we've used the— That would be—so that would be a problem if it was day 5, 13, or 20 that he's transferred. It would. I think it's particularly problematic at 5. We cite a bunch of cases, you know, albeit a summary order of this court that was 2. There's a bunch of cases 4, 5, 6. We also cite some where it's a 14-day period and it happens at day 13. I do think it's either way. And the analogy that we use, I think it's somewhat helpful, is to the retroactive amendment of a statute of limitations. If someone is in the middle of their statute of limitations period, the legislature decides to move it back and then all of a sudden it's cut off. It's been the law, Supreme Court case law, for many decades that you would have to get a reasonable period of time after that in which to file the grievance. That did not happen. So if someone agrees that whether it was day 5 or it was day 13, that was it because he was in Office of Mental Health Custody for 7 months. The 45-day—there's a little bit of play in the joints for 45 days—is a hard cap. And so at no point after either day 5 or day 13 could he have filed a grievance period. That may be what they think. If we agreed with you that maybe he should have a reasonable period to file a grievance from OMH, is there any due diligence requirement or is there any problem for you that it's rather longer than 45 days before he even makes an attempt and that in a context where it's not as if the rule says in some bright red letters, don't bother if you're at OMH. No, I think that going forward, if this court were to say, look, at the very least, this is what prisons would have to do in this situation, you'd have to give a reasonable period. But here, what we're talking about is a statutory requirement of availability. And it's conceded and all agree that there was no availability at any time. So how can you say? It's also clear that he never tried. He never tried. But Williams, and I think Williams is very instructive on this, it refers specifically to the need not to engage in a futile act. Because we're talking about a—this is fundamentally a question of statutory interpretation. You do not have to exhaust remedies if they are unavailability. You do not have to engage in futile acts and try to exhaust unavailable remedies. The remedy became unavailable— It became unavailable. It was available for a period of time, became unavailable. He didn't try. The district court says, and I'm not necessarily disagreeing with you, I'm just thinking through this problem. The district court noted that he didn't try from OMH. Maybe it wouldn't have worked from OMH, but he blew all the deadlines. Sure. And what our fundamental argument is, is him blowing the other deadlines doesn't matter because none of them were relevant. OMH was a hard no. You're in OMH. It was a hard no. Whether he did it or didn't do it, the answer would have been the same. So he gets out of OMH in November of 2011, and then he attempts to file a grievance when? How long after that? He's there on September 23, I believe. He's back in Great Neck. And then in November, there is an attempt to file— He's in Attica when he first files, right? After he's out of OMH. I think that's correct, yes. So I guess the question is, when does he actually or does he actually, within 45 days of getting out of OMH or 21 days out of OMH, is he trying to get back in line? No, he doesn't, but even if he had— Your point is that the 21 days is over by then. It was over by then. Even if he had, it wouldn't have worked. The 45 days was a hard cap, and so it was unavailable. I'm sorry. I'm sorry to interrupt you. I'm sorry to interrupt you, Your Honor. But he didn't attempt to even make sort of a tolling argument, is the point. He didn't attempt it, no. But we from both the record and what the people who processed the grievances were saying to him, that no tolling argument would have worked. It was a hard 45-day cap. It was unavailable, and he didn't have to engage in those feudal acts. That's fundamentally our point. Thank you, Your Honor. Good morning, Your Honors. I'd like to begin by addressing Judge Lynch's concern about the rule that you're struggling with, and the rule that the defendants would like this court to adopt is that under the availability analysis, if an inmate has a meaningful opportunity to pursue the grievance process prior to the transfer, then it has to be available. Now, Mr. Romano had 13 days leading up to his transfer. We agree that at 13 days, he goes into OMH custody. He would not have been able— Below, you agreed five days, didn't you? No, Your Honor. If you— Why did the court then assume it was five days? I thought the state of the record was that the respondents didn't really say—or defendants, rather—didn't really contest 5 v. 13. There wasn't really a dispute about 5 v. 13 at all, but part of that, truthfully, is that Mr. Romano didn't file a response to our summary judgment papers at all. I would direct this court to page 89 of the appendix. That's the Botsford Declaration, and we say there that he was not transferred into OMH custody until March 2nd. That's corroborated by the Inmate Movement Report on page 103. That also says discharge into OMH custody. It's further corroborated by New York law. Something that it's important for the court to understand is that when you're talking about moving an inmate out of DOC's custody into another agency's custody, there's a set process for that. It's New York Correction Law 402, and to do that, you need a court order. It's not as easy as simply placing them in another cell within the same prison. And I'll also note that on page 89, they do specify that this OMH observation cell is inside of Attica. So he hasn't left the department's custody until the 402 process is completed. They get the court order. It's not as simple as being whisked away. But my problem with the rule that you're suggesting, whether it's 5 days or 13, is that it might have been a perfectly reasonable rule to say you only have 5 days. I'm not sure that a court would say, well, that's not a reasonable opportunity. The rule is 5 days, you have 5 days. It's not a question whether 5 days is reasonable. It's that here's a person who is told you have 21 days, and then halfway through that period, approximately, a little more than halfway through, at best for you, he's told, ha ha, it's no longer available. In effect, right? Your Honor, the 21 days, and to address your concern, Judge Sullivan, it says in the regulation within 21 days. So DOC's is making clear 21 days is the outside limit with which to file a grievance. That's, that's, it is within 21 days, meaning that's the outside limit, but we can shorten it as we see fit? Your Honor, the department isn't shortening the statute of limitations. It's informing him that he has 21 days, just like any other inmate. But it's not, it's not trying to- But he did have 21 days. Your Honor, the department's not trying to blindside him. The department went through a statutory process to transfer him. The fact that he doesn't- Did he get notice of that statutory process? He would have had to be interviewed by two psychiatric examiners, at the very least. So, so it's not as easy as simply spiriting him away. No, I know, but there's a process, but is he told, in other words, this is not like an adversarial process, is it? Where he has a right to resist being transferred, and he's given notice that we're planning to transfer you on such and such a time, we're planning to transfer you sooner or later, and we have to get a court order, and what do you think about that? Is that what the process is or not? Under section 402, I understand it to give him a right to demand something of an adversarial process under some circumstances, but I'll concede that the record here isn't clear on what exactly happened. We only know that he entered homage custody on March 2nd. But getting back to why we think that this rule is the correct rule, we would anchor it in Ross versus Blake and its rejection of special circumstances and especially its definition of availability. Now, perhaps Mr. Romano expected that he would have that extra week to file his grievance, but under the revised definition of availability articulated in Ross, an inmate's subjective expectation, no matter how reasonable, has no place in the analysis. Availability is defined as capable of use, a possibility for giving him relief. That means that if Mr. Romano had the ability between day 1 and day 13 to pursue that grievance process, his failure to do so isn't the result of anything that the Department of Corrections did to him. It's a product of his own choice, and just as with any deadline, you procrastinate at your own risk. You asked, Your Honor, whether it matters that it was the department that effectuated this transfer. I would contend that it would matter if there was an allegation that it was somehow done as part of the grievance process. Certainly, if the department tried to get him out of their custody in an attempt to thwart him, that would be relevant. But here, the only facts that are in this record show that something happened to him that inspired the O.M.H. In that sense, it's really nobody's fault. It's not Mr. Romano's. Just so I'm clear, let's imagine there's not a situation with O.M.H. at all. It's just a garden variety inmate with a grievance. He files it on day 15, and the department says, you know what, we decided that 12 days was reasonable, and we're not going to consider this. Under Ross, do you think that that's okay? Your Honor, I think that that's okay. You had 12 days. The time was available. We didn't prevent you from doing this. Your Honor, I think the difference between the situation you're describing and this case is that there, the department would have been engaging in machinations. That's something that Ross expressly identifies. So there, there would be Let's imagine somebody just sincerely believes that 12 days is more than sufficient time for an able-bodied, even perhaps college-educated inmate to get his act together and avail himself of this relief. That's okay? Your Honor, if there is a set deadline, and there's no good reason for shortening the deadline, that would count as machination. It would be Ross's third alternative. Yes, Your Honor. Is that if you haven't triggered, if you don't have any evidence of that, the inmate is in custody, he has an opportunity to file, and then the prison administrators realize, I think he transfer him, that's not machinations. That's correct, Your Honor. And that's why it's important to note that nobody is truly at fault here. The department is doing what it's obligated by statute to do, to get him mental health. It's not acting to shorten the deadline on him. There's a problem with the prisoner's expectations. If you're told 21 days, I don't know, I procrastinated, you think, okay, I'm going to get started on this about day seven. And then something, it's not his fault either, and it does seem, I guess you've changed the procedures, you've made amends, it seems bizarre that the transfer to a mental health facility could arbitrarily cut off your time in this way. Well, not if it's considered that the process is capable of use beforehand. That is the definition of availability articulated by Ross, and that's why we had analogized it in our brief to an accident. Do we know that it's capable for use in this case, I mean, that he was in a position to file during the 13 days? We would argue that we carried our burden to show that there was a grievance process available to him, and then the burden shifts to Mr. Romano to show that it's unavailable as a factual matter, and that in light of his inability or his refusal to submit any response to our would be the case, that we established that he didn't exhaust, he failed to establish that it was unavailable. I know that he was in the infirmary for five days, but that's the only piece of information we have, that he's in the infirmary. He could have said in response... He could have a little bit more medical information than that, he'd suffered a broken bone to his cheekbone. That's correct. We do have the nature of his injuries, but we don't have any kind of contention from him that his injuries put him in blinding pain. We don't have any contention that while at the infirmary, he was under such round-the-clock medical attention that he just didn't have time to think about a grievance. We do know also that the prison authorities themselves decided, maybe not at day one, but at some point in this process, that he was sufficiently disturbed that they needed to get out of there and move him over to OMH custody. Does that say nothing about whether he was psychologically capable of taking advantage of the grievance procedure? Not without more from Mr. Romano, Your Honor, because what he could have done, with said, I was incapacitated, he could have described something in the cell. Keep in mind that mental... He hasn't carried his burden because he didn't say, which he could have if it was true, he could have put in an affidavit that said, I wasn't in my right head during that whole period, or I was in such blinding pain, or whatever the condition is that would have kept him from filing during that period. His burden is to at least tell his side of the story in a way that would permit a court to make the reasonable inference. We acknowledge that it's a reasonable inference in light of these facts, that he had some kind of mental health problem going on. He wouldn't be transferred to OMH custody without that. Who's in for seven months, right? That's correct, Your Honor. But keep in mind, when we're talking mental health, we're talking a gigantic field. Some mental health disorders... Your policy is the one that says nobody, well, used to say that nobody who's in mental health treatment is allowed to file a grievance. That's your policy. If you want to take a broader view, which I guess you now do, that merely being in mental health treatment doesn't prevent you from Your Honor, it's not about nobody being in mental health treatment. It's about being in the custody of a different agency. So it's not about incapacity. But you've changed it since, right? We have, Your Honor. But we would say that simply being in OMH custody doesn't make him presumptively incapable of filing a grievance. If I could give this... Maybe this is opaque then. I didn't think it was at first. So is it clear to prisoners that if, by some chance, either with their consent or against their will, they are put in OMH custody, that their time to file a grievance is going to basically tick away? Is that clear? The regulations say that you have 21 days to file a grievance and you have to file it at the facility where you're housed. So if he's sending a grievance back to Attica from OMH, he's already violating that regulation on its face. But if he's in a different facility, he can... So the question I have is, if you're at Attica, but the event that you're grieving against took place 15 days earlier when you were at Greenhaven, what do you do? You're still able to file at Attica? Yes, Your Honor. You're at Greenhaven, right? Yeah. So if you move to Greenhaven, if you're still within the Department of Correction system... You can still file. You file your grievance at Greenhaven, referencing what happened to you at Attica. Now, Your Honor... OMH is totally different. That's a totally different thing. Because OMH is a different agency altogether, they have said that they... Or they used to have that you couldn't file from that different agency because you were no longer in DOCS custody and DOCS wasn't going to address issues interagency. The older regulation said that you have 21 days and you file at the facility at which you're housed. Yes, Your Honor. Now, you mentioned opaque, and I know my adversary mentioned opaque. We respectfully submit that opaque should not factor into this at all because the only time that it's really been mentioned was for the first time just now on oral argument. This isn't an argument that he raised below. Certainly, he didn't raise any summary judgment response below, and it hasn't been raised in either of the counsel briefs. So this should be decided on whether it's unavailable as a dead end. We would contend that it's not, but whether this system is opaque just shouldn't factor into it. So it should be clear. I mean, everybody should understand as a DOC inmate that you got 21 days, but if by some chance you're put into OMH custody, then you're out of luck. You have 21 days, and if by some chance anything happens to you that's going to inhibit you from filing within that 21 days, you're going to be out of luck. That's why we talk about an accident, or as Your Honor pointed to, if he had a stroke. If he chooses to procrastinate for a two-week period and something outside of his control prevents him from going the rest of the way, then he's blown the deadline just as he would with a statute of limitations or any other filing deadline. It shouldn't be different just because what we're talking about here is administrative exhaustion. The bottom line is that he did have nearly two weeks on this record to file a grievance, and the fact that he didn't is not a product of anything that the Department did to him. It's a product of his own choice not to file, and that's the rule that we would ask this Court to adopt. I will stay in the alternative if this Court believes that perhaps there was something keeping him from exhausting within that 13-day period. The remedy wouldn't be to find that he can go to trial. The remedy would be a remand under MESA. Thank you. There would be an opportunity for more fact-finding or discovery, but not necessarily for a trial on the merits. Correct, Your Honor, because exhaustion is its own separate issue. It doesn't mean exhaustion or a trial. If there are factual issues related to exhaustion, you get a hearing. Thank you. Just two very brief points in rebuttal, Your Honors. First, on the state of the record as between 5 and 13, there is a question of fact there. If you look at A99 in the appendix, for example, that's the internal movement history display. That seems to show he seems to have left custody on the 22nd of February, didn't get back, no record of any internal movement by him until September 23rd. So at the very least, there's a question of fact on 5 versus 13. But more that counsel on the other side is offering. And with the court's indulgence, just kind of apply that to another context. We asked for 91 days, and we got it from this court, 91 days from my appearance to file a brief. If the clerk's office had said, had closed at day 60, and then said, Mr. Serretta, you've moved offices or something, we're actually not going to accept that brief. I guess I had procrastinated, and perhaps I should have been more diligent and filed the 30 days early. But for this court or any court or any grievance system to say, and you know what, going forward, we're never going to accept it. Because we're only going to go up to 90, and you're not going to be back at that office by day 90 or something like that. That is an unavailable remedy. That is, as a practical matter, incapable of effective use. And it should not matter that I didn't proffer the brief at day 89 if I was told, and it was clear, we're never accepting it. Too bad, 60 days was enough. And even though we had said it was going to be 91, you're not going to have an opportunity to file this brief. That's what happened here. But prison is different than the clerk's office. Sure. And the regs here are different than the rules of this court, or the Federal Rules of Appellate Procedure. So let's go to the stroke analogy. So would there be any difference if, instead of going to OMH custody, your client had a stroke at day 13? There'd be a big difference. Now, I think we would still have an argument. As we say in the brief, it's open question whether mental illness or physical illness can sometimes fit into the Ross availability regime. But it's very different when it's not a stroke that just ends it, but rather the act of the DOCCS to transfer. That's the difference you're relying on. That's the key difference, yes. You're saying it doesn't matter whether it was malicious, whether it was designed to thwart the relief. It could have been an innocent, in fact, well-intended, in fact, necessary move to put him in OMH custody. But that is different. Absolutely. In fact, I don't think we've ever argued that there was anything malicious about the transfer. We're saying the combined effect of the transfer plus the rule that once the transfer takes place, we're never accepting any grievances from you, and the 45 days is a hard cap, that that renders it unavailable. Thank you. Thank you both. Nicely done. That is the last argued case on the calendar this morning, so I'll ask the clerk to adjourn.